■ O. B. G. Y. N. Associations et al., Respondents, v Birthright of Brooklyn and Queens, Inc., et al., Appellants.—In an action, *inter alia,* to enjoin defendants from picketing and demonstrating in front of the medical clinic operated by plaintiffs, defendants appeal from a judgment of the Supreme Court, Kings County, dated April 5, 1976, which, *inter alia,* (1) enjoined the defendants, their officers, etc., from any type of picketing which would incite disorderly conduct or riots and (2) regulated the conduct of defendants in various specified ways. Judgment modified, on the law, by deleting (1) paragraphs (a), (c), (d), (e), (f) and (h) from the first decretal paragraph thereof, and (2) the second decretal paragraph thereof, and substituting therefor provisions enjoining defendants, their officers, agents, servants, employees and committee members, (1) from any type of picketing which would incite riot, (2) from barring any person from entering or exiting plaintiffs' premises and (3) from making any excessively loud sound which disturbs, injures, or endangers the health or safety of any patient of the medical clinic. As so modified, judgment affirmed, without costs or disbursements, and action remitted to Special Term for entry of an appropriate amended judgment. Plaintiffs at all relevant times operated and continue to operate a medical clinic for the general practice of obstetrics and gynecology where, among other things, abortions are performed. Defendants are devoted to organized resistance against the performance of such abortions. To promote their opposition to this medical procedure, the trial court found that defendants congregated in front of plaintiffs' premises and conducted demonstrations there on every Saturday, commencing on Saturday, April 19, 1975, and continuing until June 28, 1975, the last Saturday before the commencement of the trial. It was established at the trial that in the course of demonstrating and picketing, defendants carried signs stating their belief that abortion is murder, distributed pamphlets to the same effect and verbally chanted the messages printed on said signs. Defendants were further found to have blocked ingress and egress to said premises and surrounded patients and other visitors to said premises, thereby preventing their passage. As a result of the conduct of defendants, many patients entered the subject premises crying and visibly upset, causing delays and rescheduling of physicians' appointments to the detriment of the health and welfare of the patients. Additionally, on one occasion, defendants caused a window of said premises to be broken by the hurling of a rock. By virtue of defendants' conduct, a police officer has been stationed at the subject premises on stated dates in order to maintain order. We agree with Special Term that, in the circumstances here disclosed, plaintiffs are entitled to equitable relief and that defendants should be enjoined. However, the restraint imposed should be limited to defendants' activities that are not protected under the First and Fourteenth Amendments to the United States Constitution. While the cases have declared that defendants' expressive activities, i.e., picketing and pamphleteering, are protected under the First and Fourteenth Amendments, the "cases make equally clear, however, that reasonable 'time, place and manner' regulations may be necessary to further significant governmental interests, and are permitted" *(Grayned v City of Rockford,* 408 US 104, 115). It is also established that "even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved" *(Shelton v Tucker,* 364 US 479,

488). The injunctive decree, as modified, furthers the substantial governmental interests herein and impinges on defendants' freedom of expression in minimal fashion only. Thus, paragraph (a) of the first decretal paragraph has been changed so as to bar only that type of picketing which would incite riot. The courts have declared that demonstrations lose their constitutional protection if the participants engage in violence. Indeed, a participant may be arrested when he "passes the bounds of argument or persuasion and undertakes incitement to riot" *(Feiner v New York,* 340 US 315, 321). The inclusion in paragraph (a) as originally drafted of a proscription on picketing which would *tend to incite* disorderly conduct or riots has been excised because it is vague and overbroad; protected activity may otherwise fall within that prohibition. Paragraph (b) of the first decretal paragraph enjoins defendants from parking their vehicles within 100 yards of the subject premises. Such provision must be sustained as a valid exercise of the police power to control travel on the streets. "A restriction in that relation, designed to promote the public convenience in the interest of all * * * cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection" *(Cox v Louisiana,* 379 US 536, 554). While defendants have posted placards on their vehicles, the use of vehicles in a demonstration is nevertheless not protected conduct under the United States Constitution. As previously noted, certain excesses in defendants' conduct, notably chanting and shouting, hindered and impeded the lawful practice of medicine in the subject premises, thereby adversely affecting the health and welfare of plaintiffs' patients. Accordingly, we must proscribe expressive conduct which has this effect. "The crucial question [in determining whether such expressive conduct may be prohibited] is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time" *(Grayned v City of Rockford,* 408 US 104, 116, *supra).* (In *Grayned* the Supreme Court of the United States noted that while a silent vigil would not unduly interfere with a public library, making a speech in the reading room almost certainly would, even where that same speech would be perfectly appropriate in a public park.) While the chanting and shouting engaged in may be appropriate in a public park, we are proscribing that expressive activity in the vicinity of the subject medical facility. The third provision which we have substituted is narrowly tailored to achieve this result in a less restrictive manner than paragraphs (c) and (d) of the first decretal paragraph which it replaces. Paragraph (e) of the first decretal paragraph, as modified, is directed at the assurance of continued unfettered access to the medical facility by patients and other visitors. As was written in *Cox v Louisiana* (379 US 536, 555, *supra):* "A group of demonstrators could not insist upon the right to cordon off [an] entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations." Paragraph (f) of the first decretal paragraph, enjoining the use of the words "murder", "kill" and similar words on placards, must be deleted. "Above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content" *(Police Dept. of Chicago v Mosley,* 408 US 92, 95). Those words are not " 'fighting' words" within the constitutional definition announced in *Chaplinsky v New Hampshire* (315 US 568, 572) and reaffirmed in *Gooding v Wilson* (405 US 518, 522), namely, " 'those [words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " The message that defendants sought to communicate was an expression of their views about important public questions and

policies, entitled to the greatest constitutional protection. Inherent in suppressing the use of particular words—even if provocative and controversial—is the grave risk of inhibiting the expression of ideas. Our proscription from inciting to riot is the constitutional limit of our control over the content of defendants' speech and will adequately protect the governmental interests therein. Paragraph (h) of the first decretal paragraph and the final decretal paragraph of the judgment must be deleted; they are unconstitutional. The former paragraph forbids defendants from "engaging in conversation with anyone at or in front of said premises". Conversation is protected speech and a protected medium. "The claim that the [conversations] were intended to exercise a coercive impact on respondent [or its patients] does not remove them from the reach of the First Amendment. [Defendants] plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper" *(Organization For Better Austin v Keefe,* 402 US 415, 419). The final decretal paragraph, charging defendants with the responsibility for keeping the streets free of their pamphlets or literature, is constitutionally infirm. It has long been settled that noncommercial leaflet distribution is an essential right of the citizenry that cannot be banned except for especially good reason, and that the burden of street cleaning is not good enough *(Schneider v State,* 308 US 147, 160-161). While the decree as formulated does not bar pamphleteering absolutely, it does place a price on the exercise of this right; such price is that the pickets must clean the streets. Accordingly, that decretal provision has been deleted. Shapiro, J. P., Cohalan, Margett and O'Connor, JJ., concur.