**Karen Sue HARRINGTON, Appellant,**

v.

**CITY OF TULSA, Appellee.**

**No. M–86–922.**

Court of Criminal Appeals of Oklahoma.

Oct. 12, 1988.

Oliver Arbogast, Jr., Tulsa, for appellant.

Neal E. McNeill, City Atty., Mark Swiney, Asst. City Atty., Tulsa, for appellee.

OPINION

PARKS, Judge:

Appellant, Karen Sue Harrington, was charged with Disturbing the Peace by Using Abusive and Violent Language, in violation of Tulsa, Ok., Rev. Ordinances, tit. 27, § 406 (1976), convicted in a non-jury trial in the Tulsa Municipal Court, Citation No. 8593287, and fined fifty ($50.00) dollars plus costs.

Appellant owns and operates a bar in Tulsa, Oklahoma, which features nude dancing. At 11:00 p.m. on March 6, 1986, Tulsa Police Officers Dretke and Parker entered the bar to check for violations. While one dancer was being cited for an alleged violation of a municipal ordinance, appellant became angry and screamed at

the officers, "You're such an ass." She approached the officers and yelled, "You mother f——ers, you can't—you're not brave enough to go out and catch murders and robbers. You are a couple of pussies." The officers then cited appellant for abusive and violent language which disturbs the peace under Section 406 of the Tulsa Municipal Code.

■ As her first assignment of error, appellant claims that Section 406 is unconstitutional because it infringes on the right of free speech. Appellant urges that the ordinance is overbroad on its face because it attempts to regulate language which is otherwise constitutionally protected. Section 406 reads as follows:

It shall be an offense for any person at any time to willfully or maliciously disturb the peace or quietude or the life, health or safety of any individual in any manner by abusive or violent language, whether addressed to the party so disturbed or some other persons.

In support of her argument, appellant cites *Conchito v. City of Tulsa*, 521 P.2d 1384 (Okla.Crim.App.1974). In *Conchito*, this Court held unconstitutional an ordinance which made punishable any "profane or obscene language or proposal when any person hearing such is insulted or offended thereby, regardless to whom such is directed." Applying the doctrine of overbreadth, we held the ordinance invalid because the proscribed speech was not required to be loud or boisterous, or to be uttered with knowledge that someone was within hearing who might be offended. *Id.* at 1387.

We believe the ordinance in question differs significantly from that in *Conchito*. It is a settled principal that the speech which falls into the narrowly delineated category of "fighting words" may be regulated. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Fighting words, as defined by *Chaplinsky*, are those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572, 62 S.Ct. at 769. Derisive, annoying or profane language can be regulated only if it has "this characteristic of plainly tending to excite the addressee to a breach of the peace." *Id.* at 573, 62 S.Ct. at 770, citing *State v. Brown*, 68 N.H. 200, 38 A. 731 (1895).

The ordinance in question applies only to "abusive or violent language" which "disturb[s] the public peace or quietude." Unlike the *Conchito* ordinance, the present ordinance does not regulate all profane or obscene language, regardless of its effect on the addressee. Instead, it regulates only that language which is abusive or violent and is calculated to breach the peace. "Disturbing the public peace or quietude," when used in connection with a breach of the peace, requires an act or conduct which incites violence or tends to provoke or excite others to break the peace. *See McKee v. State*, 75 Okl.Cr. 390, 132 P.2d 173 (Okla.Crim.App.1943). Thus, by its very language, the ordinance only applies to conduct which falls within the category of "fighting words" as explained by *Chaplinsky*. Accordingly, we find that Section 406, as construed by this Court, is within the constitutional boundaries set by *Chaplinsky* and its progeny. *See, e.g., Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974).

■ Appellant's next two assignments of error question the sufficiency of evidence. Specifically, appellant urges that there was insufficient evidence to show that her words tended to incite an immediate breach of the peace by the police officers. In support of her argument, appellant cites *City of Houston v. Hill*, —— U.S. ——, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), which holds that a police officer can reasonably be expected to exercise a higher degree of restraint when confronted with an individual using obscene or violent language. Justice Brennan, writing for a majority of the Court, explained this holding as follows:

Moreover, in a concurring opinion in *Lewis*, Justice Powell suggested that even the "fighting words" exception recognized in *Chaplinsky v. New Hampshire*, [citation omitted], might require a

narrower application in cases involving words addressed to a police officer, because "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"

Accordingly, in order for appellant's conviction to be upheld, we must determine whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime of "abusive and violent language" beyond a reasonable doubt. *See Spuehler v. State,* 709 P.2d 202, 203–204 (Okla.Crim.App.1985). Particularly, we must focus our attention on the requirement that the proscribed language tends to provoke the addressee to breach the peace.

A review of the transcript reveals that both police officers testified that they were "offended." However, the United States Supreme Court specifically stated that police do not have "unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *See City of Houston,* ―― U.S. at ――, 107 S.Ct. at 2511. Officer Dretke testified as follows:

Q: ... Were you disturbed?

A: Yes, sir.

\* \* \* \* \* \*

Q: On those occasions, have you ever heard language like this—similar to this, ever before?

A: Yes, I've heard language like this before.

Q: What kind of reaction did you have to it?

A: Same reaction I'm having now; same reaction on the night that I issued the citation.

Q: So, the reaction, then, is one of writing a citation?

A: That or add it to the arrest charge.

\* \* \* \* \* \*

Q: I want to know if you felt physically threatened or in anyway threatened by this defendant?

A: You know, like I was scared she was going to hit me?

Q: Yeah.

A: I don't know; I believe so because as I explained before, she goes off—she has gotten extremely angry before, and I don't know what her capabilities are.

Q: Has she ever struck you before?

A: No, she has not.

Q: Ever attempted to strike you?

A: No, she has not.

Officer Parker also testified on direct examination that appellant's language "offended" him. On cross-examination, he stated as follows:

Q: Whenever Ms. Harrington spoke these words to you, did it make you want to commit an act of violence on her?

A: Not at all.

Considering the higher standard of restraint required by police officers under *City of Houston,* we must agree with appellant. As evidence by their testimony, neither officer was provoked to the point of near violence. In fact, the reaction of both police officers was that they were offended. Under *City of Houston,* ―― U.S. at ――, 107 S.Ct. at 2511, mere offense at spoken words is not sufficient to allow restriction of speech. Accordingly, we agree that there was insufficient evidence to support a finding that words spoken by appellant to the police officers were "likely to cause a fight." *See Chaplinsky v. New Hampshire,* 315 U.S. at 573, 62 S.Ct. at 770.

For the aforementioned reasons, the cause is REVERSED and REMANDED with instructions to dismiss. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

BRETT, P.J., concurs.

BUSSEY, J., dissents.