Clayton Edward LEWIS, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–87–626.

Court of Criminal Appeals of Oklahoma.

May 26, 1989.

Leah Farish, Tulsa, for appellant.

Neil E. McNeill, Tulsa City Atty., Mark D. Swiney, Asst. City Prosecutor, Tulsa, for appellee.

## OPINION

PARKS, Vice Presiding Judge:

Clayton Edward Lewis, appellant, was convicted by judge of Disorderly Conduct (Tulsa, Ok., Rev. Ordinances, tit. 27, ch. 15, § 403 (1976)), in the Tulsa Municipal Criminal Court, Case No. 489814, before the Honorable Millie Otey, Municipal Judge, and fined $50.00, plus costs. We reverse.

On March 27, 1987, appellant and other prolife activists were picketing an abortion clinic in Tulsa, Oklahoma. Tom Waugh, who worked in an office near the clinic, testified he felt threatened when appellant offered him a brochure and told him he needed to know about his neighbors. Mr. Waugh saw a man, who was with a woman entering the clinic, who appeared angry and "ready to hit" appellant. Carol Waugh said the young man was upset, had his fists clenched, and looked ready to fight, but that there was no physical confrontation between him and appellant. Although Mrs. Waugh testified some of the protestors were "yelling murderer ... Don't you feel guilty," she could not say appellant made such statements. She had "heated words" with appellant, and called him a bully. Howell Hamilton, an employee of the Waugh Corporation, stated appellant and other protestors were yelling at customers that "it was murder. You should feel guilty about what you are doing." He said the protestors were yelling from fifty (50) or sixty (60) feet away. He said a man accompanying a woman to the clinic told the protestors "it was none of their business" and that "at that point he was fairly under control of his emotions," but the man told a protestor, "shut your goddamn mouth or I'll come whip your ass," and the protestor became quiet.

The defense presented several witnesses who observed the prolife demonstrators on March 27, 1987, and testified they did not hear any loud noises or violent or abusive language coming from the demonstrators. Several witnesses testified appellant had a reputation for nonviolence and self-control regarding his picketing. Dory Schupack testified Mrs. Waugh approached the protestors and told them they could not yell at people. He said appellant protested in a self-controlled nonaggressive manner. Appellant testified he had been picketing abortion clinics for almost three (3) years, without having been arrested. He said his objective was to counsel people and disseminate information in a friendly manner about the risks of abortion, alternatives, and what the Bible says about abortion

being morally wrong. On March 27, 1987, he and several others were picketing on the public sidewalk. He sought legal advice from the City Attorney, a private attorney, and written legal materials, in an attempt to comply with the law. Appellant denied screaming "murderer" in anyone's face, but did say, "abortion is murder." When asked if he recalled a young man with clenched fists trying hard to control himself, appellant replied the young man did not act that way toward him, but toward another protestor. He said most customers simply ignored the protestors. Don Duntley testified that when appellant was explaining his position on abortion to Mr. and Mrs. Waugh, appellant did not use any abusive language or threatening body language. When Mr. Duntley asked Mrs. Waugh if she were not glad she was not aborted, Mrs. Waugh said she wished Duntley had been aborted.

Appellant was initially charged with Disorderly Conduct in violation of Tulsa, Ok., Rev. Ordinances, tit. 27, ch. 15, § 403 (1976). On the morning of trial, the City was allowed to amend the charge, over objection, to Disturbing the Peace by Abusive or Violent Language in violation of Tulsa, Ok., Rev. Ordinances, tit. 27, ch. 15, § 406 (1976). After both sides had rested, the City moved to amend the charge back to disorderly conduct under Section 403. (Tr. 126) The amendment was allowed over the vigorous objection of defense counsel. The defense was allowed to reopen.

■ Appellant raises six assignments of error. Appellee has responded only to the first two assignments. Initially, we are greatly disturbed by the following allegations of bias that the trial judge: (1) improperly coached the City prosecutor as to the "better" charge (Tr. 6–7); (2) made comments identifying with City witnesses (Tr. 6–9); (3) admitted she had not examined all the authority cited by defense counsel (Tr. 107); (4) coached the City prosecutor to object (Tr. 112–13); and (6) stated "I'm sure this is going on appeal" prior to submission of the case for decision. (Tr. 113) It is reversible error for a trial judge to indicate a predetermination of the outcome of a proceeding. *C.R.B. v. State*, 575 P.2d 636, 637 (Okla.Crim.App.1978). However, because we find appellant's fifth assignment dispositive, it is unnecessary to address the remaining assignments.

■ Appellant claims in his fifth assignment of error that the City presented insufficient evidence to support his conviction for disorderly conduct under Section 403. We agree.

Although this case involves Section 403 as opposed to Section 406, we find *Harrington v. City of Tulsa*, 763 P.2d 700, 701–02 (Okla.Crim.App.1988), controlling. Here, like *Harrington*, the City failed to prove that the words or conduct of appellant "tended to incite an immediate breach of the peace...." *Id.* at 701. "Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949).

■ Appellant's message was an expression of views on an important public question "entitled to the greatest constitutional protection." *O.B.G.Y.N. Assoc. v. Birthright of Brooklyn*, 64 A.D.2d 894, 407 N.Y. S.2d 903, 906 (1978). The court in *O.B.G. Y.N. Assoc.* held that the use of the word "murder" and similar words in the context of an abortion protest does not rise to the level of "fighting words" within the constitutional definition enunciated in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). We agree. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). A picketer loses constitutional protection by engaging in violence, and may be arrested if he "passes the bounds of argument or persuasion and undertakes incitement to riot...." *Feiner v. New York*, 340 U.S. 315, 321, 71 S.Ct. 303,

306, 95 L.Ed. 295 (1951). However, we are not faced with such a situation here. "[T]he ordinary murmurings and objections of a hostile audience cannot be allowed to silence a speaker...." *Id.* at 320, 71 S.Ct. at 306.

The judgment and sentence is REVERSED and REMANDED with instructions to DISMISS.

BRETT, P.J., and BUSSEY, LANE and LUMPKIN, JJ., concur.