**PRO–CHOICE NETWORK OF WESTERN NEW YORK, Buffalo Gyn Womenservices, P.C., Erie Medical Center, Paul J. Davis, M.D., P.C., Shalom Press, M.D., Barnett Slepian, M.D., Morris Wortman, M.D., Highland Obstetrical Group, Alexander Women's Group, Plaintiffs,**

v.

**PROJECT RESCUE WESTERN NEW YORK, Operation Rescue, Project Life of Rochester, Operation Rescue National, Friends to the Weary, Christian Activist Lifeline, Christians in Action of Rochester New York, Pro–Life Rescue Movement of Western New York, Rev. Paul Schenck, Rev. James L. Evans, Rev. Ted Cadwallader, Dwight Saunders, David Anderson, Jeffrey Baran, Brian Bayley, Bonnie Behn, Ronald Breymeier, Gilbert Certo, Scott Chadsey, Kim Day, Constance Debo, Mark Dent, Wayne Dent, Paul Diemert, Joan Giangreco, Delores Glaser, Carmelina Golba, Kevin Golba, Linda Hall, Nancy Hall, Thomas Hall, Rev. Daniel Hamlin, James Handyside, Pamela Huffnagle, Rev. Johnny Hunter, Donna Johanns, Eric Johns, Neal Kochis, Paulette Likoudis, Charles McGuire, Christopher Morrow, Annemarie Nice, Nicholas Pukalo, Carla Rainero, Thomas Riley, Patricia Ostrander, Linda Ross, Rev. Robert Schenck, David Smith, Linda Smith, Mark Sterlace, Joyce Strigel, Karen Swallow–Prior, Rev. Keith Tucci, Randall Terry, John Thomann, John Tomasello, Paul Waldmiller, Jr., Nancy Walker, Leonard Winter, Horace Wolcott, Gerald Crawford, David Long, John Doe(s) and Jane Doe(s), the last two being fictitious names, the real names of**

said defendants being presently unknown to plaintiffs, said fictitious names being intended to designate organizations or persons who are members of defendant organizations, and others acting in concert with any of the defendants who are engaging in, or intend to engage in, the conduct complained of herein, Defendants.

No. 90–CV–1004A.

United States District Court,
W.D. New York.

July 30, 1993.

Glenn E. Murray, Lucinda Finley, Isabel Marcus, Buffalo, NY, for plaintiffs.

Laurence D. Behr, Buffalo, NY, for defendants.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

Presently before the Court is defendants' motion to dismiss the fourth amended complaint and vacate the Court's February 14, 1992 preliminary injunction. The basis for defendants' motion is that dismissal of the federal claim under 42 U.S.C. § 1985(3) is compelled by the recent decision of the United States Supreme Court in *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), and without the federal claim, the Court is precluded from exercising pendent jurisdiction [1] over the remaining state-law claims, or in the alternative, should decline to do so in the interests of judicial economy, convenience, fairness and comity. For the reasons set forth below, the Court grants defendants' motion to dismiss as to plaintiffs' § 1985(3) claim only, with leave to plaintiffs to amend their complaint; denies defendants' motion

relative to the continued exercise of pendent jurisdiction over plaintiffs' state-law claims; and denies defendants' motion to vacate the injunction.

### PROCEDURAL BACKGROUND

On February 14, 1992, this Court rendered a Decision and Order granting plaintiffs' motion for a preliminary injunction. *Pro-Choice Network of W. New York v. Project Rescue W. New York,* 799 F.Supp. 1417 (W.D.N.Y.1992). The injunction was based on a finding of irreparable harm and plaintiffs' likelihood of success on their 42 U.S.C. § 1985(3) claim and two state law claims: N.Y.Civ.Rights Law § 40–c, and New York State trespass law. *Id.* at 1429–32. The Court noted that the outcome of *Bray,* which was at the time pending before the Supreme Court, could require the Court to revisit its decision. *Id.* at 1422 n. 2.

On January 13, 1993, the Supreme Court decided *Bray,* holding that the complaint in that case failed to state a claim upon which relief could be granted under § 1985(3) for an alleged conspiracy to deprive women of their rights to interstate travel and to obtain an abortion. —— U.S. ——, 113 S.Ct. 753.

On January 20, 1993, defendants filed the instant motion to dismiss the complaint and vacate the injunction based on their interpretation of *Bray* that it forecloses the use of § 1985(3) in all abortion protest cases and further, that it is tantamount to an assertion that this Court never had subject matter jurisdiction over this action, and therefore has no authority to continue to exercise jurisdiction over the state-law claims. Plaintiffs filed a memorandum of law in opposition to defendants' motion on February 12, 1993, and defendants filed a reply memorandum on March 12, 1993. Prior to oral argument on defendants' motion, the Second Circuit Court of Appeals interpreted the *Bray* decision in *Town of W. Hartford v. Operation Rescue,* 991 F.2d 1039 (2d Cir.1993), leaving open the possibility that plaintiffs seeking to enjoin the activities of abortion protesters could, after *Bray,* state a federal claim under § 1985(3).

---

**1.** *See infra* note 7.

This Court heard oral argument on defendants' motion on May 5, 1993. At that time, defendants submitted a supplemental brief in support of their motion, which addressed *Town of W. Hartford.* The Court provided plaintiffs an opportunity to respond to that brief, and specifically to address the viability of their § 1985(3) claim after *Town of W. Hartford.* The last paper relative to this issue was filed May 26, 1993, and defendants' motion was deemed submitted.

## DISCUSSION

■ Initially, defendants have not specified whether they are moving for dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or failure to state a claim pursuant to Rule 12(b)(6). "As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action." *Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951).

> Where the complaint 'is so drawn as to seek recovery under the Constitution or laws of the United States,' the district court must entertain the suit unless the federal claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous.'

*Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir.1990) (quoting *Bell v. Hood,* 327 U.S. 678, 681, 682–83, 66 S.Ct. 773, 775, 776, 90 L.Ed. 939 (1946)). Defendants assert that *Bray* rendered plaintiffs' § 1985(3) claim so insubstantial that this Court no longer has jurisdiction even to decide whether to, in its discretion, continue to exercise pendent jurisdiction over the state-law claims. This is an argument that the Court lacks subject matter jurisdiction and that the complaint must be dismissed pursuant to Rule 12(b)(1). The Court, however, finds this argument without merit and contrary to the explicit holding in *Bray* that "[w]hile respondents' § 1985(3) causes of action fail, they were not, prior to our deciding of this case, 'wholly insubstantial and frivolous,' so as to deprive the Dis-

trict Court of jurisdiction." — U.S. at ——, 113 S.Ct. at 768 (quoting *Bell,* 327 U.S. at 682–83, 66 S.Ct. at 776). Defendants' reliance on the phrase "prior to our deciding of this case" as meaning that after January 13, 1993, all such causes of action are frivolous even if asserted prior to that date, is a contortion of the plain meaning of the Court's holding.

The Second Circuit, when presented with a similar request to find the § 1985(3) claim insubstantial in *Town of W. Hartford,* cited the above language in *Bray* in summarily denying the request. 991 F.2d at 1048–49; *see also New York State NOW v. Terry,* 961 F.2d 390, 396 (2d Cir.1992) (*"Terry II"*) (noting that even if Supreme Court reversed the Fourth Circuit in *Bray,* that holding would be of little benefit to defendants unless Supreme Court also found that the federal question was, from the inception, wholly insubstantial and frivolous), *vacated, remanded sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic,* — U.S. ——, 113 S.Ct. 1233, 122 L.Ed.2d 640 *reinstated,* 996 F.2d 1351 (2d Cir.1993); *NOW v. Operation Rescue,* 816 F.Supp. 729, 730 (D.D.C.1993) (court rejected defendants' assertion that § 1985(3) claims were so insubstantial after *Bray* that it lacked subject-matter jurisdiction over the action, including the state-law claims); *United States v. Terry,* 815 F.Supp. 728, 730 n. 4 (S.D.N.Y.1993) (noting that "[i]nasmuch as the Preliminary Injunction was issued *prior* to the *Bray* decision, and was not, therefore, based on claims that were, at the time, 'wholly insubstantial and frivolous,' this Court is not divested of subject-matter jurisdiction.").

Thus, the Court is not deprived of jurisdiction as a result of *Bray,* and must consider whether plaintiffs' § 1985(3) claim, as set forth in their fourth amended complaint, states a claim, after *Bray,* upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

> If dismissal for facial insubstantiality is avoided, further inquiry into the existence of federal question jurisdiction ... turns on the existence of the underlying claim as pleaded. The existence of such a claim is of course a necessary predicate for the

existence of federal jurisdiction over it. But if it is determined on this inquiry that jurisdiction fails because no such federal claim exists, the proper disposition is to dismiss on the merits for failure to state a claim rather than for a want of subject matter jurisdiction.

*Ridenour v. Andrews Fed. Credit Union,* 897 F.2d 715, 719 (4th Cir.1990) (citing *Bell,* 327 U.S. at 682, 66 S.Ct. at 776; *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)); *see also Town of W. Hartford v. Operation Rescue,* 915 F.2d 92, 99–100 (2d Cir.1990); *Spencer,* 903 F.2d at 173.

## I. *The Viability of Plaintiffs' Section 1985(3) Claim after Bray.*

In general, in order to prevail on a § 1985(3) claim, a plaintiff must prove that: (1) defendants engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) acted in furtherance of the conspiracy; (4) whereby a person is either injured in his or her person or property or deprived of any right or privilege of a citizen of the United States. *See New York State NOW v. Terry,* 886 F.2d 1339, 1358 (2d Cir.1989) ("Terry I") (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

The Supreme Court in *Bray* focused on two requirements: "(1) [a showing that] 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' [hereinafter "animus" requirement]; and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.' " [hereinafter "interference" requirement]. —— U.S. at ——, 113 S.Ct. at 758 (quoting *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798; *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983)).

### A. *Plaintiffs' Fourth Amended Complaint* [2]

Plaintiffs' first cause of action sets forth a claim under § 1985(3), involving both the right to travel and the right to obtain an abortion. With respect to the class-based animus requirement, the fourth amended complaint ("complaint") alleges that defendants have conspired together for the purpose of denying women seeking abortions and other family planning services the equal protection of the laws and equal privileges and immunities under the law, and further, that defendants continue to be motivated by an invidiously discriminatory animus directed at women seeking to exercise their constitutional and legal right to choose abortions. Item No. 329, ¶ 130.

With respect to the right to travel, the complaint alleges that defendants do not accept decisions of the Supreme Court that the Constitution protects a woman's right to travel across state lines to obtain medical care including abortion, *id.* ¶ 84, and that defendants' activities have and continue to disrupt and prevent the delivery of all health care services to patients from Western New York, other parts of New York, Pennsylvania and Ohio. *See, e.g., id.* ¶¶ 94–104.

As to the right to an abortion, plaintiffs allege that defendants do not accept the decisions of the Supreme Court that the Constitution guarantees and protects a women's right to choose abortion and to carry out that decision, and that they intend to interfere with those rights of women attending the targeted clinics and providers. *Id.* ¶ 83.

### B. *The Preliminary Injunction Decision and Order*

This Court in its Preliminary Injunction Decision and Order found that, with respect to the animus requirement:

[i]t is clear under *Terry* that defendants have the requisite class-based animus. There is uncontroverted evidence that defendants are opposed to the constitutional right of a woman to choose to have an

---

**2.** Plaintiff's fourth amended complaint was filed on December 23, 1992. For the most part, it

simply added defendants and updated the case's factual background.

abortion and that the object of their "rescue" activities is to hinder or prevent women—a group that is a protected class under § 1985(3)—from exercising that right.

799 F.Supp. at 1429–30 (citing *Terry I*, 886 F.2d 1339).

With respect to the interference requirement, this Court found that plaintiffs had established, by a preponderance of the evidence, that defendants' conspiracy infringed both the right to interstate travel and the right to have an abortion.

> [P]laintiffs have presented uncontroverted evidence that defendants' "rescue" activities have infringed the right of women to travel interstate to obtain an abortion[,] ... [and that] defendants specifically target ... out-of-state patients because they are easily identifiable.
>
> .    .    .    .    .
>
> [With respect to the right to choose to have an abortion,] there has been substantial uncontradicted evidence that defendants' activities are intended, and do in fact, prevent and hinder local police from protecting the right of women to choose to have an abortion.... Such action by private persons satisfies § 1985(3)'s "state involvement" requirement.
>
> Furthermore, it cannot be disputed that defendants' activities have the object of depriving women of their right to choose to have an abortion.

*Id.* at 1430, 1431 (citations omitted).

Plaintiffs' § 1985(3) cause of action and the Court's findings in its preliminary injunction decision and order were based on then-controlling Second Circuit precedent with respect to the animus and interference requirements.

### C. *The Animus and Interference Requirements after Bray.*

On January 13, 1993, the date of the Supreme Court's decision in *Bray,* "the judicial landscape of § 1985(3) was radically altered." *Town of W. Hartford,* 991 F.2d at 1045. The district court in *Bray* had granted injunctive relief under § 1985(3), based on interference with the right to interstate travel. That decision was subsequently affirmed by the

Fourth Circuit. *See NOW v. Operation Rescue,* 726 F.Supp. 1483 (E.D.Va.1989), *aff'd per curiam* 914 F.2d 582 (4th Cir.1990). The Supreme Court reversed on essentially two grounds: (1) that on the record before it, the plaintiffs had not established the invidious animus element of § 1985(3); and (2) that, also on the record before it, the plaintiffs had not established that defendants intended to hinder the right to travel. The Court also held that deprivation of the right to abortion cannot be the object of a purely private conspiracy.

In terms of the animus requirement, the Supreme Court held that:

> To begin with, we reject the apparent conclusion of the District Court ... that opposition to abortion constitutes discrimination against the "class" of "women seeking abortion".... [T]he class "cannot be defined simply as the group of victims of the tortious action." "Women seeking abortion" is not a qualifying class.
>
> Respondents' contention, however, is that the alleged class-based discrimination is directed not at "women seeking abortion" but at women in general. We find it unnecessary to decide whether *that* is a qualifying class under § 1985(3), since the claim that petitioners' opposition to abortion reflects an animus against women in general must be rejected. We do not think that the "animus" requirement can be met only by maliciously motivated, as opposed to assertedly benign (though objectively invidious), discrimination against women. It does demand, however, at least a purpose that focuses upon women *by reason of their sex*—for example ..., the purpose of "saving" women *because they are women* from a combative, aggressive profession such as the practice of law. The record in this case does not indicate that petitioners' demonstrations are motivated by a purpose (malevolent *or* benign) directed specifically at women as a class.... Given this record, respondents' contention that a class-based animus has been established can be true only if one of two suggested propositions is true: (1) that opposition to abortion can reasonably be presumed to reflect a sex-based intent,

or (2) that intent is irrelevant, and a class-based animus can be determined solely by effect. Neither proposition is supportable.

—— U.S. at ——, 113 S.Ct. at 759–60 (quoting *Carpenters,* 463 U.S. at 850, 103 S.Ct. at 3367 (Blackmun, J., dissenting)).

In terms of the right to interstate travel, the Supreme Court held that:

> [I]t does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not "for the purpose" of denying equal protection simply because it has an effect upon a protected right. The right must be *"aimed at,"*; its impairment must be a conscious objective of the enterprise.... [T]he "intent to deprive of a right" requirement demands that the defendant do more than merely be aware of a deprivation of right that he [or she] causes, and more than merely accept it; he [or she] must act at least in part for the very purpose of producing it. That was not shown to be the case here, and is on its face implausible. Petitioners oppose abortion, and it is irrelevant to their opposition whether the abortion is performed after interstate travel.
>
> Respondents have failed to show a conspiracy to violate the right of interstate travel for yet another reason: petitioners' proposed demonstrations would not implicate that right. The federal guarantee of interstate travel ... protects interstate travelers against two sets of burdens: "the erection of actual barriers to interstate movement" and "being treated differently" from intrastate travelers. As far as appears from this record, the only "actual barriers to movement" that would have resulted from Petitioners' proposed demonstrations would have been in the immediate vicinity of the abortion clinics, restricting movement from one portion of the Commonwealth of Virginia to another. Such a purely intrastate restriction does not implicate the right of interstate travel, even if it is applied intentionally against travelers from other States, unless it is applied *discriminatorily* against them.

*Id.* at ——, 113 S.Ct. at 762–63 (citations and footnote omitted).

Although the district court in *Bray* had not addressed whether the right to an abortion had been infringed, the Supreme Court chose to address the issue, and held that the right to an abortion under the Fourteen Amendment was also an inadequate basis for respondents' § 1985(3) claim because deprivation of the right to an abortion "cannot be the object of a purely private conspiracy." *Id.* at ——, 113 S.Ct. at 764. The Court held that "[w]hereas, unlike the right of interstate travel, the asserted right to an abortion was assuredly 'aimed at' by the petitioners, deprivation of that federal right (whatever its contours) cannot be the object of a purely private conspiracy." *Id.*

### D. The Second Circuit's Interpretation of Bray in Town of W. Hartford v. Operation Rescue.

Given this seemingly clear-cut language in *Bray,* plaintiffs in the instant case initially conceded that, after *Bray,* their § 1985(3) claim was subject to dismissal for failure to state a claim. *See* Item No. 349, at 3. Nevertheless, on April 21, 1993, the Second Circuit decided *Town of W. Hartford* and held that *Bray* does not foreclose all resort to § 1985(3) in all cases involving the obstruction of access to abortion clinics. 991 F.2d at 1048 (holding that such an assertion constitutes an over-reading of *Bray* ).

The Second Circuit interpreted *Bray* as setting forth two grounds for reversal—that on the record before the Supreme Court, the plaintiffs there had not established the invidious animus ingredient of § 1985(3), *id.* at 1045, and that, also on the record before the Court, the plaintiffs had not established that defendants intended to hinder the right to travel. *Id.* at 1047.

With respect to the animus requirement, the Second Circuit noted that after *Bray:* "(1) women seeking abortions do not constitute a class protected by § 1985(3), and (2), if women in general constitute a class protected by the statute ... 'the claim that petitioners' opposition to abortion reflects an animus against women in general must be rejected.'" *Id.* at 1048 (quoting *Bray,* —— U.S. at ——, 113 S.Ct. at 759). The Court nevertheless held that the Supreme Court's analysis

of the animus requirement was tied to the facts there adduced. "Accordingly, we think that an assessment of the animus aspect of the case at bar requires a further review, in the light of the legal principles relating to animus announced in *Bray,* of the record evidence bearing on appellants' motivation." *Id.*

The Second Circuit also held that:

a determination of whether appellants intended to and did inhibit a right protected by § 1985(3)—either the Fourteenth Amendment abortion right, protected against the state; or the citizenship right to travel without public or private impediment—calls for scrutiny of the instant record through the prism of the *Bray* Court's pronouncement that "impairment [of the right] must be a conscious objective of the enterprise."

*Id.* (quoting *Bray,* —— U.S. at ——, 113 S.Ct. at 762).

The Second Circuit did not specifically address the Supreme Court's analysis with respect to the right to abortion, but remanded to the district court to determine, in light of *Bray,* whether intent was established to interfere with the right to abortion as well as the right to interstate travel. *Id.* In a footnote, the Court instructed the district court that "it would be well ... to reconsider, in the light of *Carpenters v. Scott,* 463 U.S. 825, 830–34, 103 S.Ct. 3352, 3357–59, 77 L.Ed.2d 1049 (1983), the state involvement aspect of the [plaintiff's] claim of interference with the abortion right." *Id.* n. 11.

E.  *Effect of Bray and Town of W. Hartford on Plaintiffs' § 1985(3) Claim.*

■ Resolution of defendants' motion to dismiss requires the Court to accept the material facts alleged in plaintiffs' complaint as true, *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)); *Dwyer v. Regan,* 777 F.2d 825

(2d Cir.1985), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986), and to construe the allegations of the complaint in the light most favorable to plaintiffs. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986).

However, even reading the complaint in the light most favorable to plaintiffs, and accepting the material facts alleged as true, the Court finds that, after *Bray,* plaintiffs' complaint does not state a claim under § 1985(3) upon which relief can be granted. The allegations in plaintiffs' complaint were geared toward the definition and interpretation of the animus and interference requirements prior to *Bray.* The law has since been redefined, and plaintiffs' allegations no longer set forth a cognizable § 1985(3) claim. The allegation that defendants are motivated by an invidiously discriminatory animus directed at women seeking abortions, for example, has been explicitly rejected by the Supreme Court. *Bray,* —— U.S. at ——, 113 S.Ct. at 759–60; *see also Town of W. Hartford,* 991 F.2d at 1048. Accordingly, plaintiffs' complaint, in its present form, fails to state a claim under § 1985(3), and defendants' motion to dismiss must therefore be granted as to that claim.

Nevertheless, the Second Circuit in *Town of W. Hartford* interpreted *Bray* not as a requirement that every § 1985(3) claim in the various abortion protest cases throughout this Circuit be dismissed outright, but rather as a decision based on the particular facts of the case, such that district courts in this Circuit should reconsider their cases and injunctions in light of the Supreme Court's interpretation of the animus and interference elements of § 1985(3). Because *Town of W. Hartford* clearly affords plaintiffs an opportunity to attempt to conform their § 1985(3) claim to the holding in *Bray,* the Court grants plaintiffs leave to file an amended complaint, specifically, an amended § 1985(3) cause of action.[3]

---

**3.** Plaintiffs assert that *Town of W. Hartford* rendered moot the entire premise of defendants' motion to dismiss such that the case remains in the same pendent jurisdiction posture it has been in all along. Item No. 366, at 7. The Court disagrees. Defendants' motion to dismiss is not moot because the issue is whether plaintiffs' complaint sets forth a § 1985(3) claim under *Bray.* The answer to that question is clearly no, and the Second Circuit's interpretation of *Bray* in *Town of W. Hartford* does not change that result. *Town of W. Hartford* merely limits *Bray's*

■ Defendants assert that *Town of W. Hartford* requires the Court to vacate its preliminary injunction. Although the Second Circuit did vacate the injunction in place in *Town of W. Hartford* prior to remanding to the district court, the injunction at issue there was a permanent injunction and the Court vacated it with the express intent to allow the district court to take a fresh look at it in light of *Bray.* 991 F.2d at 1048. Here, the injunction is preliminary, the record is open, and discovery is ongoing. This Court is therefore not required by the holding in *Town of W. Hartford* to vacate the preliminary injunction. *See also Bray,* — U.S. at —, 113 S.Ct. at 768 (Even where § 1985(3) claims were dismissed, Court declined to vacate the injunction and dismiss the entire action. Instead, it remanded the case to the district court to consider whether the same scope of injunctive relief was warranted on the remaining state-law claims.).

In a related argument, defendants assert that plaintiffs are limited to the record presently before the Court in establishing their ability to bring their § 1985(3) claim within *Bray.* The Court disagrees. This argument involves two separate considerations—the granting of defendants' motion to dismiss the § 1985(3) claim with leave to amend, and the viability of the preliminary injunction, which is grounded in part on the § 1985(3) claim.

With respect to the motion to dismiss, there is no question that a court has authority to grant a motion to dismiss with leave to amend. *See, e.g.,* Fed.R.Civ.P. 15(a). If plaintiffs, after further investigation of their ability to bring their § 1985(3) claim within *Bray,* decide to amend their complaint, and set forth a § 1985(3) claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), plaintiffs will clearly be able to utilize the discovery process to gather evidence in support of their amended claim.

With respect to the viability of the preliminary injunction, if plaintiffs file an amended complaint setting forth a legally cognizable § 1985(3) claim, the Court will likely be required to hold a supplemental hearing to reevaluate plaintiffs' ability, after *Bray,* to establish, by a preponderance of the evidence, their likelihood of success on their § 1985(3) claim, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor with respect to that claim.[4] *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 (2d Cir.1989). Prior to any such hearing, plaintiffs would be required to submit memoranda of law addressing the legal impact of *Bray* and *Town of W. Hartford* on their § 1985(3) claim,[5] as well as affidavits of fact witnesses setting forth how they intend to establish the animus and interference requirements in light of these cases.[6] In attempting to bring their § 1985(3) claim within *Bray,* and establish the requirements for a preliminary injunction, plaintiffs would not be constrained by the Court's prior findings in its preliminary injunction decision and order. The Court's findings and the evidence presented were based on the then-controlling interpretation of the animus and interference

dismissal of the § 1985(3) claim to the facts of that case and affords plaintiffs an opportunity to amend their § 1985(3) claim to fit within the holding in *Bray.*

4. The Court notes, however, that the preliminary injunction is grounded not only on the § 1985(3) claim, but two state-law claims as well. Further, the Court has decided to continue to exercise pendent jurisdiction over the state-law claims regardless of the ultimate disposition of the § 1985(3) claim. *See infra* at 1027–32.

5. Plaintiffs would, for example, be required to address in greater detail their previous assertion that the Second Circuit decision in *Spencer v. Casavilla,* 903 F.2d 171 (2d Cir.1990), allows them to establish interference with the right to interstate travel without establishing a particular

intent to disrupt interstate as opposed to intrastate travellers—an assertion that appears to be contrary to the explicit holding in *Bray.* See Item No. 366, at 9–10. Plaintiffs would also be required to address the impact of the *Bray* Court's discussion of interference with the right to abortion, in light of the fact that the Second Circuit did not specifically address that aspect of the *Bray* holding in *Town of W. Hartford.* 991 F.2d at 1048 n. 11.

6. *Town of W. Hartford* makes clear that plaintiffs must establish the animus and interference requirements based on the particular facts of this case. They cannot, for example, rely on studies and theories with respect to the motivation of abortion protestors in general. Their proffer must be fact-specific.

requirements in the Second Circuit. To limit plaintiffs to the record presently before the Court would be tantamount to requiring them to have anticipated the Supreme Court's ruling in *Bray*. In providing plaintiffs an opportunity to fit their § 1985(3) claim within that ruling, *Town of W. Hartford* cannot be interpreted as precluding this Court from considering additional evidence or making new findings of fact in light of it.

Thus, the Court grants defendants' motion to dismiss as to plaintiffs' § 1985(3) claim only, with leave to plaintiffs to amend the complaint to bring their § 1985(3) claim within the holding in *Bray*.

## II. *Pendent Jurisdiction* [7]

Regardless of the ultimate disposition of plaintiffs' § 1985(3) claim, the Court will continue to exercise pendent jurisdiction over the six state-law claims.[8] The Court makes this determination at this juncture due to its granting of defendants' motion to dismiss the § 1985(3) claim, albeit with leave to plaintiffs to amend, as well as its determination that even without the § 1985(3) claim, the Court would be compelled, under notions of judicial economy, convenience, fairness and comity, to continue to exercise jurisdiction over the remaining state-law claims.

A federal court may exercise pendent jurisdiction over state-law claims "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The decision to exercise pendent jurisdiction is within the discretion of the district court and, in exercising that discretion, the court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction. . . ." *Id.* 484 U.S. at 350, 108 S.Ct. at 619 (citing *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139). The Court has carefully considered and weighed the values of judicial economy, convenience, fairness and comity, and finds that they point definitively toward retention of jurisdiction over plaintiffs' state-law claims in this case.

### A. *Judicial Economy, Convenience and Fairness.*

Defendants assert essentially two arguments in support of their contention that the judicial economy, convenience and fairness factors do not point to continued exercise of pendent jurisdiction over plaintiffs' state law claims: (1) assuming plaintiffs' § 1985(3) claim is ultimately dismissed, it will likely be dismissed prior to trial, leaving plaintiffs without a federal claim; and (2) the Court's involvement in this case has not been substantial, as evidenced by the case's procedural posture.

The Supreme Court held in *Gibbs* that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139; *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 664 (2d Cir.1988) ("The basis for retaining jurisdiction is weak when . . . the federal claims are dismissed before trial."). However, subsequent Supreme Court decisions made clear that *Gibbs* "d[id] not establish a mandatory rule to be applied inflexibly in all cases." *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7 (citing *Rosado v.*

---

**7.** The instant lawsuit was commenced prior to the December 1, 1990 effective date of the statute providing for "supplemental" jurisdiction rather than "ancillary" and "pendent" jurisdiction. Accordingly, the concept of "pendent" jurisdiction applies in this case. Nevertheless, the Court notes that the statute providing for supplemental jurisdiction essentially "codif[ied] existing case-law" on the subject of pendent jurisdiction. *See* 28 U.S.C. § 1367; *see also Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir.), *cert. de-*

*nied,* —— U.S. ——, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

**8.** The six state-law claims are as follows: the New York Civil Rights Law and trespass claims upon which the preliminary injunction is in part based, as well as claims for tortious interference with business, intentional infliction of emotional harm, tortious harassment, and false imprisonment.

*Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970)). "Th[at] statement [in *Gibbs* ] simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*

This is not the "usual" case, and the factors of judicial economy, convenience and fairness can only be served by the Court's retention of pendent jurisdiction over plaintiffs' state-law claims. "[E]ven when federal claims are resolved before trial, comity does not automatically mandate dismissal of pendent state claims." *Enercomp, Inc. v. McCorhill Pub., Inc.,* 873 F.2d 536, 545 (2d Cir.1989) (citations omitted). " 'Trial is simply a convenient benchmark marking the point by which substantial resources have surely been committed. If those resources are expended without a trial, the essential purpose of the doctrine of pendent jurisdiction may be served by retaining the case.' " *Id.* (quoting *Graf v. Elgin, Joliet & E. Ry.,* 790 F.2d 1341, 1348 (7th Cir.1986)).

Because the Court finds that substantial resources have been expended in this case, despite its pre-trial procedural posture, it also rejects defendants' argument seeking to minimize and trivialize the nature and extent of this Court's involvement in this case over the almost three years of its pendency. There is no dispute that this case is presently in a discovery posture; that plaintiffs filed a fourth amended complaint in December 1992; and further, that the Court has now permitted the filing of a fifth amended complaint to allow plaintiffs to amend their § 1985(3) claim. However, the list of motions and issues addressed by this Court over the past three years is substantial. In addition, such

a list is incapable of fully and adequately reflecting the amount of time and judicial resources this Court has expended on this case.

Soon after the Court granted plaintiffs' motion for a temporary restraining order in September 1990, defendants made a motion to dismiss or stay the action pursuant to the abstention doctrine, which the Court denied after extensive briefing and lengthy oral argument. During the same time period, from December 1990 to January 1991, the parties, with the assistance of the Court, attempted unsuccessfully to settle this action. A hearing on plaintiffs' motion for a preliminary injunction was held from March 6, 1991 to April 1, 1991. That motion also required extensive post-hearing briefing and argument. As noted previously, the Court's decision on plaintiffs' motion for a preliminary injunction was ultimately rendered on February 14, 1992.[9]

Between February 1991 and January 1992, the Court held hearings and oral argument on three motions for civil contempt. The hearing relative to Nancy Walker was held from February 6, 1991 to February 14, 1991; the Bonnie Behn and Carla Rainero hearing was held from June 18, 1991 to July 12, 1991; and the hearing relative to the Revs. Paul and Robert Schenck and Project Rescue was held from October 15, 1991 to January 30, 1992.[10] The Court considered evidence adduced at these contempt hearings as well as the evidence presented at the preliminary injunction hearing in determining whether to grant plaintiffs' motion for a preliminary injunction. *Pro–Choice Network,* 799 F.Supp. at 1421. On May 27 and May 28, 1992, the Court held a hearing on a fourth motion for civil contempt filed against Rev. Paul Schenck and Rev. Daren Drzymala. Written decisions were filed granting each of the motions for civil contempt as to all of the

---

9. Some of the defendants appealed the preliminary injunction decision to the Second Circuit. *See* Item No. 136. By stipulation and order filed April 1, 1993, that appeal, No. 92–7302, was dismissed without prejudice to reinstatement by any party's counsel within twenty days of this Court's resolution of the instant motion. Item No. 363.

10. The Court later determined that Rev. Paul Schenck had made false statements under affirmation during the hearing on his contempt motion, and that the possibility existed that a crime had been committed. Accordingly, the Court referred the matter to the United States Attorney for "whatever action he deem[ed] appropriate." Item No. 250, at 17 n. 9. That matter is still pending.

named individuals.[11] Plaintiffs were awarded judgments pursuant to the terms of the temporary restraining order, as well as reasonable attorneys' fees and costs. The attorneys' fees issues continue to involve this Court and Magistrate Judge Carol E. Heckman, to whom the motions were referred for report and recommendation.

In the Spring of 1992, the Court became involved in the Pro–Life Movement's convergence on Buffalo, New York for what was termed the "Spring of Life." Prior to the demonstration's commencement in late April 1992, the Court heard argument on a motion by Children's Hospital to intervene as a plaintiff; a motion by plaintiffs to modify the preliminary injunction and amend the complaint; and a motion by defendants to stay the preliminary injunction pending appeal. In a decision and order dated April 16, 1992, the Court granted Children Hospital's motion to intervene; denied plaintiffs' motion to modify the injunction without prejudice; and denied defendants' motion for a stay. Plaintiffs' motion to amend the complaint was later granted by Magistrate Judge Heckman, to whom it had been referred.[12]

As a result of the Spring of Life protests, criminal contempt charges were instituted against six individuals. These cases were referred to the United States Attorney's Office, but after reconsideration, were transferred to two Court-appointed Special Prosecutors. *See In re Slovenec*, 799 F.Supp. 1441 (W.D.N.Y.1992). Thereafter, the Court became involved in the complex issue of whether the alleged contemnors were entitled to a jury trial; ruled on a substantive motion in limine; and heard the guilty pleas and imposed sentence on each of the defendants. Finally, in March 1993, the Court was faced with a recusal motion by defendants.

Moreover, the Court's involvement in this case is ongoing. During the pendency of the instant motion, there were alleged violations of the terms of the preliminary injunction on four separate occasions—April 17, 1993, April 24, 1993, May 1, 1993 and May 15, 1993. The Court was made aware of such violations in June 1993, when plaintiffs presented the Court with orders to show cause why certain named individuals should not be held in civil and criminal contempt. The Court signed the orders to show cause on July 1, 1993, indicating its intention to proceed criminally against the alleged contemnors, and referred the investigation and prosecution of these cases to the United States Attorney. Because these alleged violations occurred at a time when the preliminary injunction was still in place, the Court's involvement would not end even if the injunction were vacated prior to their resolution.

Given the above accounting of the Court's involvement in this action, not to mention the past and future involvement of the Second Circuit Court of Appeals,[13] it is clear that substantial judicial resources have been expended regardless of the ultimate disposition of the § 1985(3) claim and its timing. While the Court recognizes that judicial economy should not be the controlling factor, *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 564 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991), to ignore the Court's substantial involvement in this case over a period of almost three years, simply on the ground that the case is in a pre-trial mode, would be to ignore the reality of scarce judicial resources and the positive aspects of preventing needless duplication of legal proceedings in federal and state court. The Supreme Court has indicated its unwillingness "to defeat the common-sense policy of pendent jurisdiction—the con-

---

**11.** These decisions were appealed to the Second Circuit. On May 26, 1993, the Second Circuit dismissed the appeals of Nancy Walker, No. 92–7854, and Bonnie Behn and Carla Rainero, No. 92–7954, for lack of appellate jurisdiction. *Pro–Choice Network v. Walker*, 994 F.2d 989 (2d Cir. May 26, 1993). On June 15, 1993, the appeals in the other two contempt cases, Nos. 92–9124 and 92–9202, were reactivated, Item No. 371, and are currently pending before the Second Circuit.

**12.** The motion to amend was separately referred to Magistrate Judge Heckman on September 4, 1992. The entire case was referred to her on August 19, 1992, for resolution of all pretrial matters and to hear and report on all dispositive motions. Since that time, Magistrate Judge Heckman has been involved in the supervision of discovery and other pretrial matters.

**13.** *See supra* notes 9 and 11.

servation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim." *Rosado,* 397 U.S. at 405, 90 S.Ct. at 1214.

In addition, this Court's familiarity with the factual and legal issues involved in this case weighs in favor of the exercise of pendent jurisdiction, *Enercomp,* 873 F.2d at 546; *Philan Ins. Ltd. v. Frank B. Hall & Co.,* 786 F.Supp. 345, 347 (S.D.N.Y.1992); *see also Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990), and is such that "it would ... [be] a pointless waste of judicial resources to require a state court to invest the time and effort necessary to familiarize itself with a case well-known to [this Court]." *Enercomp,* 873 F.2d at 546. "To require [this Court's efforts] to be duplicated in state court would hardly ... serve[ ] the interests of economy, convenience and fairness that are central to any exercise of pendent jurisdiction." *Id.* at 545 (citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139).

Thus, the Court finds that the judicial economy, convenience and fairness factors weigh heavily in favor of the Court retaining pendent jurisdiction over the state-law claims.

### B. *Comity and Federalism.*

The interests of comity and federalism do not point toward divestiture of pendent jurisdiction in this case.

#### 1. Novel and Unsettled Issues of State Law

Defendants assert that the Court should decline to exercise jurisdiction over the state-law claims because they present novel and unsettled issues of state law. *See Castellano,* 937 F.2d at 758–59; *Independent Bankers Assoc. v. Marine Midland Bank,* 757 F.2d 453, 464–65 (2d Cir.1985), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554

(1986). While the Court notes that "[f]ailure to dismiss a pendent claim after dismissing a federal claim 'may be an abuse of the district court's discretion' especially when the state claim involves novel questions of state law," *Raucci,* 902 F.2d at 1054 (quoting *Robison v. Via,* 821 F.2d 913, 925 (2d Cir.1987)), it finds that even if one or two of the state-law claims in this case involve a novel or unsettled question of New York law, there are six state-law claims and the Court is not required to consider any novel question of state law in order to keep the preliminary injunction in place. In addition, the Court is familiar with the state-law claims from the hearing on the preliminary injunction; the injunction was ultimately based in part on the Court's finding that plaintiffs were likely to succeed on at least two of the state-law claims.[14]

#### 2. Prejudice to Plaintiffs

A declination by the Court to exercise jurisdiction over the state-law claims, assuming the § 1985(3) claim was ultimately dismissed, would result in substantial prejudice to plaintiffs in having to relitigate their case in state court, both in terms of time and expense, and the prejudice associated with being without an injunction for perhaps an extended period of time. Contrary to defendants' continued assertions, the state court action instituted by plaintiffs prior to the instant federal court action is not pending in any true meaning of the word. Indeed, such continued assertion by defendants' counsel is a clear misrepresentation of what has occurred or is occurring in state court. No action has taken place in the state case either by plaintiffs or defendants essentially since the initiation of the instant lawsuit. Indeed, the Court has been advised by counsel that the state action has been "marked off" and stricken from the calendar, and that if it is not restored to the calendar by November 25, 1993, the action will be determined abandoned and will be dismissed for neglect to prosecute. *See* Item No. 355, Addendum,

---

**14.** As previously noted, the Court's preliminary injunction decision and order only addressed two of plaintiffs' six state-law claims—New York Civil Rights Law and trespass—finding that because those claims and the § 1985(3) claim were suffi-

cient to grant plaintiffs' motion for a preliminary injunction, it need not address whether a preliminary injunction should be granted based on the other state-law claims. *Pro–Choice Network,* 799 F.Supp. at 1432 n. 11.

Letter to Counsel from New York State Supreme Court Justice Thomas P. Flaherty.

Further, defendants' federalism and comity arguments are nothing more than a re-hashing of arguments rejected by this Court when it declined to grant defendants' abstention motion. In its abstention decision and order of October 29, 1990, the Court explicitly found that the state and federal actions were not parallel; that even as of October 1990, the state action was largely inactive; and that neither the state nor federal action raised critical state concerns warranting the Court's abstaining from exercising its jurisdiction over the federal action. Item No. 34. Even the ultimate failure of plaintiffs' § 1985(3) claim would not require a different result. *See Terry II*, 961 F.2d at 396 (noting that *Bray* would have little impact on the injunction in place there because the order was fully supported by adequate and independent state-law grounds); *NOW v. Operation Rescue*, 816 F.Supp. at 730–31 (holding that District of Columbia-law claims provide sufficient basis for "retaining federal jurisdiction, enforcing the Injunction, protecting the previously established rights of plaintiffs, and vindicating the vital authority of a United States District Court"); *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 681 F.Supp. 688, 691–92 (D.Or.1988) (upholding preliminary injunction against anti-abortion demonstrators based on pendent state-law claims after § 1985(3) claim was dismissed).[15] Fundamentally, with or without a § 1985(3) claim, this case involves a significant federal interest in balancing what are in essence, conflicting rights guaranteed by the United States Constitution—the First Amendment right of free speech, and the Fourteenth Amendment right to an abortion. The federal courts have as much interest in protecting these rights as New York State. This is so regardless of the Supreme Court's decision in *Bray*.

### 3. DiLaura v. Power Authority

■ Finally, defendants assert that the Court's decision not to exercise pendent jurisdiction in *DiLaura v. Power Auth.*, 786 F.Supp. 241 (W.D.N.Y.1991), *aff'd*, 982 F.2d 73 (2d Cir.1992), in effect requires the Court to decline to do so here. Initially, the Court will not be compelled to rule in a particular way based simply on prior holdings it has made in prior unrelated cases. Further, the decision whether or not to exercise pendent jurisdiction is a discretionary one arrived at through the careful weighing of various factors which, depending on the specific facts of the case, may have more or less application. "[T]he doctrine of pendent jurisdiction ... is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie–Mellon*, 484 U.S. at 350, 108 S.Ct. at 619.

To the extent, however, that the Court's pendent jurisdiction analysis in *DiLaura* is relevant to the instant case, the Court finds defendants' arguments unpersuasive. The declination to exercise pendent jurisdiction in *DiLaura* was based primarily on a finding that the interests of federalism and comity strongly supported the dismissal of the state-law claim because the exercise of pendent jurisdiction "would run contrary to Congress' pronounced intent not to invade the jurisdiction of the States" in the areas of property rights and tort liability. 786 F.Supp. at 254. The Court's decision in *DiLaura* was also based on a finding that the considerations of judicial economy, convenience and fairness were not substantially implicated where, despite the number of years the case had been pending, the Court's involvement had been slight and the parties would not be prejudiced by dismissal of the state claim. *Id.* at 254–55.

Thus, because this case is not the "usual" case where dismissal of all federal claims prior to trial would point toward declining to

---

**15.** The Court also notes the following cases in which injunctions similar in scope to the instant injunction have been upheld solely on state-law grounds: *Parkmed Co. v. Pro–Life Counselling, Inc.*, 91 A.D.2d 551, 457 N.Y.S.2d 27 (1st Dept. 1982) (injunction based on New York law enjoining blocking of ingress and egress, and physically abusing or harassing people seeking services at abortion clinic); *O.B.G.Y.N. Assoc. v. Birthright of Brooklyn & Queens, Inc.*, 64 A.D.2d 894, 407 N.Y.S.2d 903 (2d Dept.1978) (injunction based on New York law enjoining various forms of picketing, chanting and shouting in vicinity of abortion clinics).

**1032**

exercise jurisdiction over the remaining state-law claims, the Court finds that it would be a waste of judicial resources to deny pendent jurisdiction. The Court's decision to exercise pendent jurisdiction over the state-law claims, regardless of the ultimate disposition of the § 1985(3) claim, leaves without question the viability and continued enforceability of the preliminary injunction.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss plaintiffs' § 1985(3) claim pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. However, based on *Town of W. Hartford,* the Court grants plaintiffs leave to amend their fourth amended complaint to attempt to bring their § 1985(3) claim within the Supreme Court's holding in *Bray.* Because the Court wishes to provide plaintiffs sufficient time not only to evaluate their ability to state a § 1985(3) claim after *Bray,* but also their ability to establish facts supporting such a claim, as required by *Town of W. Hartford,* the Court grants plaintiffs until October 1, 1993 to file their amended complaint. Defendants will have until November 1, 1993 to answer or otherwise move. If plaintiffs decide not to file an amended complaint, they should promptly notify the Court so this case can move forward.

In conjunction with its ruling on defendants' motion to dismiss, the Court denies defendants' motion to vacate the injunction, and continues, regardless of the ultimate disposition of the § 1985(3) claim, to exercise pendent jurisdiction over plaintiffs' state-law claims.

IT IS SO ORDERED.