**Joshua PRICE, III, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–90–554.

Court of Criminal Appeals of Oklahoma.

April 28, 1994.

---

Katherine Hine, Muskogee, for appellant at trial.

Barry Benefield, Oklahoma City, for appellant on appeal.

Norman Thygesen, Michael Littlefield, Asst. Dist. Attys., Muskogee, for appellee at trial.

Susan B. Loving, Atty. Gen., Cherrilyn J. McLane, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION ON REVIEW

PER CURIAM:

Joshua Price was tried by jury and convicted of Incitement to Riot (21 O.S.1981, § 1320.2) in Muskogee County District Court, Case No. CRF–89–234, before the Honorable Lyle Burris, District Judge. He received an eight year prison sentence. This Court's Emergency Appellate Division Panel No. 20 (Panel) affirmed Price's conviction in an October 15, 1993 unpublished opinion. Price is now before the Court on a Petition for Review, Rule 12.10, *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1993, Ch. 18, App. The incitement to riot statute has not been before this Court, and Price challenges the constitutionality of that statute. We grant review to settle this case's constitutional question of first impression. Due to the constitutionally flawed application of the stat-

ute, we withdraw the Panel's opinion and issue this opinion in its place, reversing the judgment and remanding for a new trial.

On April 30, 1989, two white Muskogee police officers were in the Port City housing project to arrest two black males for an offense unconnected with this case. A crowd of predominantly black residents gathered at the site of the arrests. Initially, the crowd was not particularly disorderly, but Price (possibly accompanied by another black male) began speaking to the crowd, using profanity, telling the officers they were unwelcome and urging them to leave. When Price started to leave the area, one of the officers told him to stop. Price continued walking then turned to face the officer with a clenched fist. The officer tackled Price and the two fell to the ground. Eventually, both officers handcuffed Price. During the struggle, appellant yelled that the officers were hurting him and asked the crowd, "Help me. Stop them. Get them off of me." (Tr. 114) The crowd moved close enough to touch the officers, and one person may have struck an officer. No other violence occurred.

■ A state may limit First Amendment free speech rights if the statute is narrowly drawn and there is a clear societal need to limit expression, *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The proscribed expression must meet the clear and present danger test outlined in *U.S. v. Dellinger.*[1] The clear and present danger test enables a trier of fact to decide when particular expression becomes so entwined with action that the expression may be considered action and subject to suppression or punishment. See, e.g., *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939) (state may prevent or punish speech which provides clear and present danger of riot, violence, etc.); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572–73, 62 S.Ct. 766, 769–70, 86 L.Ed. 1031 (1942) ("fighting words" are those which inflict injury or tend to incite immediate breach of peace; the test is whether words are likely to cause average addressee to fight). In determining the constitutionality of the federal anti-riot act, the *Dellinger* court found that speech may rise to action when it is reasonably likely to propel others to act, it is directed to inciting and likely to incite imminent lawless action, it is inseparably locked with action, or it poses a clear and present danger.[2] The statute need not contain this language as long as the clear and present danger test is used to interpret the statute.[3]

1. 472 F.2d 340 (7th Cir.1972). The *Dellinger* court analyzed the constitutionality of the federal anti-riot statute. The clear and present danger test was first enunciated in *Schenk v. U.S.,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, 473 (1919), and was used by this court long before *Dellinger.*

2. *Dellinger,* supra note 1, 472 F.2d at 360. This Court's use of the clear and present danger test pre-dates *Dellinger.* In fact, the Court applied the test in the criminal syndicalism cases of the early 1940's, *Shaw v. State,* 76 Okla.Crim. 271, 134 P.2d 999 (1943); *Wood v. State,* 76 Okla. Crim. 89, 134 P.2d 1021 (1943); *Jaffee v. State,* 76 Okla.Crim. 95, 134 P.2d 1027 (1943); *Wood v. State,* 77 Okla.Crim. 305, 141 P.2d 309 (1943). In the first three cases, defendants were charged with being members of the Communist Party which advocated the overthrow of the government by force and violence. The Court determined that the question was whether utterances of criticism of the government were made at such a time and place as might be immediately dangerous to public peace, *Shaw,* 134 P.2d at 1019. The Court held that a defendant had a right to have submitted to the jury (1) the question whether the principles advocated by the Party presented a real and imminent danger of

violence, sabotage or unlawful acts against the government, and (2) a jury instruction that such advocacy was reasonably likely to result within the immediate future in the commission of serious violence, *Shaw,* 134 P.2d at 1020. In *Wood,* 141 P.2d 309, defendants were charged with circulating and distributing published material which violated the Criminal Syndicalism Act. As a rule of law, the *Wood* court found that under the First Amendment, before utterances may be penalized, there must be a reasonable apprehension of danger to the Government, *Wood,* 141 P.2d at 319. Denial of requested jury instructions on clear and present danger prevented the jury from passing on the issues, thus denying a fundamental right, *Wood,* 141 P.2d at 320.

3. This Court used the clear and present danger test in its interpretation of the Oklahoma criminal syndicalism statute in order to bring that statute in line with the Constitution. In addition, Arkansas, California, Georgia, Pennsylvania, and North Carolina have "clear and present danger" or similar language in their incitement to riot statutes. In Delaware, Florida, Louisiana, Maryland, and Michigan, courts have required that the incitement to riot statutes be interpreted or construed using the clear and present danger test.

Title 21 O.S.1981, § 1320.2 prohibits any person intending to cause, aid or abet a riot, from **doing an act or engaging in conduct** that urges others to commit acts of unlawful force or violence or other enumerated unlawful acts.[4] The statute contains no reference to the clear and present danger test. Here, the record indicates the trial court did not consider the evidence in light of the test.[5] Additionally, the trial court refused to give appellant's requested instruction on constitutionally protected speech.[6]

■■■ If construed to apply to speech which meets the clear and present danger test, 21 O.S.1981, § 1320.2 would appear to be constitutional. A plain reading of the statute does not indicate to a trial court the necessity for such an interpretation. This constitutional flaw can be cured by requiring jury instructions on constitutionally protected speech, as requested here, in Section 1320.2 prosecutions.[7] We now hold that in each prosecution under 21 O.S.1981, § 1320.2, the trial court shall give the following instruction to the jury after the instructions on the elements of the offense:

In determining whether the State has proved each of the above listed elements of the offense beyond a reasonable doubt, you must also find beyond a reasonable doubt: (1) the defendant intended to cause, aid or abet a riot by committing an act or engaging in conduct that urged other persons to commit acts of unlawful force or violence or other enumerated unlawful acts and (2) such act or conduct created a clear and present danger of imminent unlawful action.

■■■ Price's judgment and sentence are **REVERSED** and the cause is **REMANDED for NEW TRIAL.**

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE and STRUBHAR, JJ., concur.

CHAPEL, J., concurs in part/dissents in part.

CHAPEL, Judge, concurring in part, dissenting in part:

I agree in all respects with the Court's excellent opinion and take exception only to the disposition. I dissent to the decision to remand the case for a new trial, and believe we should reverse with instructions to dismiss. The case should be dismissed for a variety of compelling reasons. Prominent among them is the fact that this case epito-

---

**4.** It is unclear from the record whether Price's actions at the time of arrest or his speech to the crowd are alleged to have violated the statute. The Information charged that Price "conducted himself in a combative manner and requested a group of bystanders to attack officers of the Muskogee Police Department." It would appear that Price's speech formed at least one basis for the charge. The jury could have convicted Price on that basis.

**5.** Although the Panel discussed the clear and present danger test, it failed to *apply* the test. The Panel determined (1) that 21 O.S.1981, § 1320.2, which contains no specific language prohibitions, on its face must apply only to "fighting words" and (2) that no constitutional issue is raised by analogy to *Harrington v. Tulsa*, 763 P.2d 700, 701 (Okl.Cr.1988) (Tulsa disturbing the peace ordinance which prohibited use of "abusive or violent language" held constitutional because wording on its face required an act or conduct inciting violence or tending to provoke or excite others). The Panel declared that the state is authorized to punish speech in certain cases, found that this statute falls within that category and that Price made "inflammatory remarks". Under case law these conclusions do not sufficiently analyze the statute or Price's be-

havior to justify finding that constitutionally protected speech has not been impermissibly infringed.

**6.** The Panel held this was not error, citing *Scott v. State*, 84 Okla.Crim. 171, 180 P.2d 196 (1947). In *Scott* the defendant did not testify and presented no substantial evidence to support his theory of the case. This Court noted that questions regarding trial instructions must be determined by the facts in each case and found that as no substantial evidence supported Scott's theory, the trial court correctly refused to give requested instructions. *Scott* does not support the trial court's refusal in this case. A defendant is entitled as a matter of law to jury instructions supporting the defense theory if there is possible support in the evidence, even if the evidence is discredited. *Broaddrick v. State*, 706 P.2d 534, 536 (Okl.Cr.1985); *Davis v. State*, 665 P.2d 1186, 1195 (Okl.Cr.1983); *Holt v. State*, 278 P.2d 855, 857 (Okl.Cr.1955). Here, defendant and numerous witnesses presented testimony supporting defense theory that appellant did not utter "fighting words", but engaged in constitutionally protected expression of opinions.

**7.** See Footnote 2 above.

mizes the effect of delay in our appellate system. The delay in this case was harmful, prejudicial and therefore unconstitutional.

Price, an indigent, filed his notice of intent to appeal in this case on November 27, 1989. Acquiring counsel who could timely reach his case complicated matters for Price. The Oklahoma Indigent Defense System first represented Price, then later his case was contracted out. His brief in support of his appeal was filed on November 16, 1992. The State filed its brief on June 21, 1993. Forty-three months elapsed before Price's appeal was at issue in this court. When the appeal was finally perfected and this Court reviewed the proceedings, we found the trial court had committed reversible error by refusing to issue requested instructions which were necessary for any constitutional prosecution under this statute. Price was sentenced to eight years incarceration. He remains imprisoned on this invalid conviction.

This Court recently addressed the issue of appellate delay and decided we were "powerless to cure this problem". *Manous v. State,* 797 P.2d 1005 (Okl.Cr.1990). I must respectfully disagree. This Court unquestionably has the jurisdiction and authority to grant relief to individuals in criminal appeals for violations of their Constitutional rights. Where appellate delay is unreasonable, harmful, and prejudicial to a defendant's rights, the delay is unconstitutional and this Court should fashion appropriate relief. Not only should this Court act on its authority to grant relief in cases like this, it would certainly be preferable to any Federal District Court or Federal Circuit Court attempt to address the problem for us.

Upon remand, Price could be convicted, receive a mistrial, be acquitted, or have his case dismissed. If the case is remanded for another trial, the State will have to pay the expenses of prosecuting and defending the case. Moreover, the State cannot realistically expect to get a greater sentence than that imposed at the first trial, and Price will receive credit for the time he is now serving. Thus, there is almost no possibility of additional sanctions should Price be convicted again. Price's acquittal would mean, as a matter of justice, that he will have been convicted and served years in prison before his case was resolved in his favor, and that he will have labored under the disabilities of a felony conviction. Should his case be dismissed, the result would be the same as if we dismiss it now, without the attendant delay that will result from our remand.

Price did not raise the issue of unreasonable appellate delay as a proposition of error. However, he was clearly prejudiced by the delay; he has spent more than four years wrongfully incarcerated on an erroneous conviction, with all the attendant stigma and disabilities of the conviction itself. To subject him to another trial would, in my judgment, compound a serious constitutional wrong. For these compelling reasons, I would reverse with instructions to dismiss.