OSCN Found Document:TERRY, et al. v. GENTNER DRUMMOND & VICKI BEHENNA

 

 
 TERRY, et al. v. GENTNER DRUMMOND & VICKI BEHENNA2026 OK CR 10Case Number: CQ-2025-860Decided: 03/05/2026Mandate Issued: 03/05/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 10, __ P.3d __

 

SINCERE TERRY; MIA HOGSETT; TYREKE BAKER; PRESTON NABORS; TREVOUR WEBB; AUSTIN MACK,
Plaintiffs -- Appellants,
v.
GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General; VICKI BEHENNA, in her official capacity as the Oklahoma County District Attorney,
Defendants -- Appellees.

OPINION ANSWERING CERTIFIED QUESTIONS OF LAW

ROWLAND, JUDGE:

¶1 Before this Court is the October 24, 2025 Order of the United States Court of Appeals for the Tenth Circuit entered in its pending appeal styled Terry, et al. v. Drummond, et al., Case No. 24-6046. The current order is a continuation of a previous order certifying a question of law that we answered in Terry v. Drummond, 2025 OK CR 11Terry I).

¶2 The current order from the Court of Appeals explains that based on our opinion in Terry I, "additional questions of state law--both identified in the original certification order and key to the resolution of this appeal--remain outstanding," and that our answer to these new questions "may be determinative of the case at hand."

¶3 The Court of Appeals certified the following additional four questions for our consideration and we respond pursuant to the Uniform Certification of Questions of Law Act. See 20 O.S.2021, § 1601et seq.:

1. If § 1311 does require the State in a threats prosecution to prove a defendant had a mens rea of willfulness, see 2025 OK CR 11at least "consciously disregard[ed] a substantial and unjustifiable risk" that "others could regard his statements as threatening violence"? See Counterman v. Colorado, 600 U.S. 66, 78-82 (2023).

2. The OCCA's opinion states "the crime of riot . . . relates to and prohibits certain defined conduct rather than forms of expression." 2025 OK CR 11State v. Bad Heart Bull, 257 N.W.2d 715, 722 (S.D. 1977)). Does this mean § 1311 does not cover speech at all?

3. Does "any threat to use force or violence" in § 1311 cover only "true threats"? True threats are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003).

4. The OCCA's opinion states that § 1311 requires "mutual or common intent" along with "immediate power of execution," which together "substantially produce the same effect" as requiring proof a defendant "consciously disregarded a substantial risk." 2025 OK CR 11Counterman's mandate that the State in a threats prosecution must prove a defendant's subjective intent of recklessness?

¶4 These questions stem from the plaintiffs-appellants' lawsuit in this case, alleging a facial constitutional challenge to Oklahoma's felony riot statute, which reads:

Any use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot.

21 O.S.2011, § 1311

1.

¶5 In its first Order Certifying a Question of State Law in this case, the Court of Appeals posed this question:

Does Okla. Stat. Ann. tit. 21, § 1311 require the State to prove the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence toward another to convict for threats constituting a riot?

We answered in the negative, explaining that Section 1311 requires a mens rea of willfulness and a common or mutual intent among three or more persons thus satisfying any constitutional concerns. Terry I, 2025 OK CR 11Counterman's requirement of recklessness, we noted that "the combined factual elements of a mutual or common intent to use or threaten violence, and that the violent threats be 'accompanied by immediate power of execution,' substantially produce the same effect." Id., 2025 OK CR 1121 O.S.2011, § 1311

¶6 In answering Certified Question 1, we again decline to hold that Counterman requires proof of additional elements to prove a violation of Section 1311. This is because, unlike the Colorado statute at issue in Counterman, Oklahoma's riot statute does not require a judicially-recognized mens rea to avoid constitutional peril because it is not directed at pure speech. Prosecutions brought pursuant to Section 1311 are not threats prosecutions in the Counterman sense; they are riot prosecutions which can include an element of threats to use force or violence, i.e., speech, but only when accompanied by other elements integral to the crime of riot.

¶7 In so holding, we clarify what we alluded to in Terry I: satisfying the elements of Oklahoma's riot statute, as set forth in Terry I, would necessarily prove more than conscious disregard of a substantial and unjustifiable risk that the statements could be regarded as threatening violence. Furthermore, we explicitly adopt the definition of willfulness in 21 O.S.2021, § 92

The term "willfully" when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.

¶8 The majority opinion in Counterman was crafted for a situation simply not presented by Section 1311, namely a statute penalizing pure speech with no requisite mens rea to satisfy the "true threats" prong required of such prosecutions. That statute targeted pure speech, while Section 1311 requires more than just speech for criminal liability, and it does not rely solely upon the defendant's speech for a prosecution in the way that Colorado's stalking law did. While the elements of Section 1311 may certainly include a threat to use force or violence, the threat alone, however, is insufficient to prove a violation. As we held in Terry I, even three or more persons acting in concert and issuing threats of violence is not enough for a conviction; they must also act willfully, with a mutual or common intent, with the immediate power of executing those threats. Terry I, 2025 OK CR 11

¶9 In this regard, Section 1311 is more akin to statutes which several courts have found do not fall within the ambit of Counterman. See People v. Crawford, 2025 CO 22, ¶ 33, 568 P.3d 426, 434 ("Counterman is simply inapplicable" to stalking prosecutions which do "not rest on the allegedly threatening content of the communications[.]"); State v. Labbe, 2024 ME 15, ¶ 50, 314 A.3d 162, 179 ("It does not follow, however, that the Counterman standard applies to every stalking prosecution in which words are spoken or electronic communication devices are used."); People v. Morris, 2025 COA 15, ¶ 7, 567 P.3d 172, 174 ("We hold that a stalking prosecution premised on acts constituting approaching or contacting the victim does not implicate the First Amendment because it is not premised on the content of the defendant's speech or expressive conduct.")

2.

¶10 In Certified Question 2, we are asked whether our opinion in Terry I means that Section 1311 does not cover speech at all? The answer is no. One of the elements of this charge can be a threat to use force or violence, 

3.

¶11 In Certified Question 3, the Court of Appeals asks whether the "threat" referred to in Section 1311 covers only "true threats" in First Amendment parlance. We answer in the negative. Prosecutions under Section 1311 are simply not traditional threats prosecutions where determining whether the threat is "true" is central to protecting First Amendment interests. In Counterman, the Supreme Court explained "[t]he 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late")." Counterman, 600 U.S. at 74.

¶12 Section 1311 has other requirements to protect the speaker from being prosecuted based upon the content of his or her speech: the threat must be accompanied by traditional accoutrements of a riot such as presence of at least three persons, immediate power of carrying out the violence, etc. Thus, the speech at issue here, the threat, is integral to the criminal activity of riot, and thus unprotected by the First Amendment irrespective of true threats analysis. "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949) (emphasis added). See also, United States v. Alvarez, 567 U.S. 709, 717 (2012) (speech integral to criminal conduct is but one of a few types of speech which may be restricted consistent with the First Amendment).

¶13 The Supreme Court coined the true threats doctrine fifty-six years ago in Watts v. United States, 394 U.S. 705, 708 (1969). "[A] statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." Watts, 394 U.S. at 707. Since then, the Court has never applied the true threats doctrine to a statute which, like Section 1311, criminalizes a combination of conduct and some speech or expressive conduct rather than pure speech. To hold that the threat referenced in Certified Question 3 must be a true threat is to hold that Section 1311 necessarily incorporates among its elements the Counterman mens rea standard. We rejected that contention in Terry I and in answering Certified Question 1, supra.

4.

¶14 In Certified Question 4, the Court of Appeals inquires how the combination of factors required to prove a violation of Section 1311 "satisf[ies] Counterman's mandate that the State in a threats prosecution must prove a defendant's subjective intent of recklessness . . . ." In answering this question, we necessarily draw upon and incorporate our answers to Certified Questions 1, 2, and 3. In short, prosecutions under Section 1311 are not threats prosecutions which target and rely upon the content of the speech for criminal liability. Hence Section 1311 is not to be measured under Counterman's mandate because it does not reach mere advocacy which is protected speech, but instead is directed at "preparing" and "steeling" a group for violent action. See Noto v. United States, 367 U.S. 290, 298 (1961) ("[T]he teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action."). There is therefore no need to look to Counterman to buttress Section 1311 since it does not target pure speech. See also United States v. Curtin, 78 F.4th 1299, 1306 n. 3 (11th Cir. 2023), cert. denied, 144 S. Ct. 595 (2024), reh'g denied, 144 S. Ct. 1089 (2024) (Counterman "is irrelevant" where evidence showed defendant acted at least knowingly).

¶15 In our view, the combination of factors the Court of Appeals references satisfies any edict in Counterman: First, liability under Section 1311 requires a given defendant to have acted "willfully" pursuant to 21 O.S.2021, § 92Miller v. State, 1913 OK CR 74130 P. 813O'Barr v. United States, 1909 OK CR 166105 P. 988

¶16 Second, Section 1311 can never be satisfied by the speakers' words alone, no matter how threatening. It requires the conduct of assembling with at least two other persons and reaching a mutual or common intent to threaten violence. This is constitutionally significant because American law has long upheld the notion that persons acting in concert to commit crimes pose a greater danger to society than a single actor.

This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement--partnership in crime--presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

Callanan v. United States, 364 U.S. 587, 593--94 (1961). See also 21 O.S.Supp.2025, § 800

¶17 Third is Section 1311's requirement that where the threat of force, rather than actual force is used, the speaker must have the ability to immediately carry out the group's threats, meaning not only the physical ability but also the state of mind. Our Court has never had occasion to interpret the phrase "immediate power of execution," but the plain and ordinary meaning of the phrase clearly refers to an ability to act upon the threat without need of further reflection or steeling for action and without further physical preparation or staging. Evidence of immediate power of execution would certainly include the group members' physical stances or posture, physical movements, level of agitation, excitation, or anger, and any signs of physical aggression indicating the group is capable of immediately acting upon their threats. Any person who assembles with two or more others and acting willfully and with mutual and common intent, threatens violence in circumstances reasonably indicating they could immediately act upon those threats, has at least acted with the type of recklessness required by Counterman, even though we do not believe Counterman to be the proper yardstick with which to measure this statute.

ANSWER

¶18 We therefore hold:

1. Counterman is inapplicable in a riot prosecution under 21 O.S.2021, § 131121 O.S.2021, § 92Counterman's holding that the State must prove the mens rea of recklessness in a threats prosecution is not controlling because, inter alia, satisfying the other elements in a Section 1311 riot prosecution proves more than conscious disregard of a substantial and unjustifiable risk that the statements could be regarded as threatening violence.

2. Section 1311 covers speech although not in the same way statutes penalizing pure speech do.

3. The "threat" referred to in Section 1311 does not cover only "true threats". The threat is integral to the criminal activity of riot and not protected by the First Amendment irrespective of true threat analysis.

4. Prosecutions under Section 1311 are not threats prosecutions which target and rely upon the content of the defendant's speech for conviction. Satisfaction of all the elements of riot supports a finding the defendant acted, at least, with the recklessness required by Counterman, the inapplicability of Counterman notwithstanding.

¶19 Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2026), the MANDATE is ORDERED issued upon delivery and filing of this decision.

CERTIFIED QUESTIONS OF LAW FROM THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT,
THE HONORABLE VERONICA S. ROSSMAN, CIRCUIT JUDGE

 
 
 
 APPEARANCES FOR APPELLANTS - PLAINTIFFS
 MEGAN LAMBERT
 DEVRAAT AWASTHI
 AMERICAN CIVIL LIBERTIES UNION
 OF OKLAHOMA FOUNDATION
 P.O. BOX 13327
 OKLAHOMA CITY, OK 73113
 
 JARED K. CARTER
 CORNELL LAW SCHOOL
 FIRST AMENDMENT CLINIC
 MYRON TAYLOR HALL
 ITHACA, NY 14853
 
 
 APPEARANCES FOR APPELLEE -- DEFENDANTS
 
 GARRY M. GASKINS, II
 SOLICITOR GENERAL
 ZACH WEST
 DIRECTOR OF SPECIAL LITIGATION
 CULLEN D. SWEENEY
 ASSISTANT SOLICITOR GENERAL
 OFFICE OF THE ATTORNEY GENERAL
 FOR THE STATE OF OKLAHOMA
 313 NE 21ST STREET
 OKLAHOMA CITY, OK 73105
 
 

OPINION BY ROWLAND, J.
LUMPKIN, P.J.: Concur
MUSSEMAN, V.P.J.: Concur
LEWIS, J.: Concur in Part/Dissent in Part
HUDSON, J.: Concur

FOOTNOTES

First, participating with 2 or more other persons; Second, who are acting together; Third, without authority of law [Fourth, in a (use of force)/violence.] OR [Fourth, in a threat to use force/violence; Fifth, accompanied by the immediate power of execution.]

See Spence v. State of Washington, 418 U.S. 405, 409 (1974) (per curiam) (noting conduct enjoys First Amendment protection when it is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments . . . ").

 

 

LEWIS, J., CONCURRING IN PART AND DISSENTING IN PART:

¶1 I concur in the majority's adoption of the statutory definition of willfulness as the mens rea element of a riotous threat in violation of Section 1311 and concur partly with the answer to Question 2 as stated below. I respectfully dissent from the majority's attempt to refute the basic legal premise underlying the questions submitted by the Court of Appeals--i.e., that a Counterman-based "recklessness" mens rea appears essential to the constitutional application of the riotous threat statute.

¶2 The Court of Appeals must independently determine the application of Counterman to the case pending before it, and it seems clear from the questions before us that it seeks no direct assistance in doing so. Out of deference to the Court of Appeals, I would take Counterman's application to Section 1311 as a given from the questions presented and offer answers that permit a conclusive determination of the pending appeal.

¶3 Like the majority, I would therefore require Section 92's definition of willfulness as the mens rea element of a riotous threat charge. The Court of Appeals asks us in Question No. 1 whether that mens rea of "willfulness" as an element of riotous threats also demands proof that defendants consciously disregarded a substantial and unjustifiable risk that others could regard their statements as threatening violence. We should answer "Yes." 

¶4 A statute punishing threatening speech must include a mens rea of at least recklessness to distinguish criminal threats from speech protected by the First Amendment. Counterman, supra; see also, Gerhart v. State, 2015 OK CR 12360 P.3d 1194

¶5 This Court can undoubtedly interpret and apply Section 1311 within the parameters of Counterman by defining the "willfulness" element for riotous threats to require proof that defendants making the threat consciously disregarded a substantial and unjustifiable risk that others could regard the statement as threatening force or violence. "The statute need not contain this language as long as the [required First Amendment standard] is used to interpret the statute." (emphasis added). Cf. Price v. State, 1994 OK CR 26873 P.2d 1049incitement to riot; and granting new trial with proper instruction).

¶6 In Question No. 2, the Court of Appeals notes our statement in Terry Certified Question I that Section 1311 "relates to and prohibits certain defined conduct rather than forms of expression;" and asks, "Does this mean § 1311 does not cover speech at all?" We should answer "No." In plain language, a threat is "an expression of one's intention to inflict evil, injury, or damage." Webster's Ninth New Collegiate Dictionary 1228 (1986). Such expressions are often spoken and are, in any case, inherently communicative. Insofar as any threat to use force or violence is a factual element of a charge of riot under Section 1311, I agree with the majority that the statute covers any communication that is an integral part of that criminal conduct.

¶7 In Question No. 3, the Court of Appeals asks whether the threats punishable in Section 1311 are limited to "true threats." We should answer "Yes." True threats are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003) (emphasis added).

¶8 True threats are not protected by the First Amendment and may be punished by statutes like Section 1311. Id. But we must interpret and apply Section 1311 in actual cases to avoid the infringement of any legally protected speech. With the mens rea element of willfulness; Counterman's requirement of proof of conscious disregard of the threatening nature of the speech to others; and the element of immediate power of execution, Section 1311 assuredly reaches only "true threats" and will not inflict criminal penalties for protected speech.

¶9 In Question No. 4, the Court of Appeals follows up on our answer in Terry Certified Question I and asks how the defendants' "mutual or common intent" to make a threat, along with "immediate power of execution" of an alleged violent threat, can "satisfy Counterman's mandate that the State in a threats prosecution must prove a defendant's subjective intent of recklessness?" I find this question is mooted by the proposed answers in Questions No. 1-3, which would explicitly incorporate robust protections from Counterman.

¶10 Notwithstanding the majority's different approach, the realities of trial and appellate litigation yet ensure that the riotous threat statute can be applied within the limits of the First Amendment. Defendants charged with riotous threats can litigate their First Amendment defenses by demurrer and motion to set aside at a preliminary hearing, and again by motion to dismiss for insufficient evidence before trial. They can seek Counterman mens rea jury instructions from the trial court along the very same lines as the "clear and present danger" instructions we required in Price. And in the event of a conviction at trial, defendants can fully litigate properly preserved First Amendment challenges by timely appeal to this Court.

¶11 Actual prosecutions for riotous threats under Section 1311 will probably remain vanishingly rare. Rarer still, I suspect, are those cases where riotous threats of force or violence by three or more persons, with immediate power of execution, could present any serious question that the defendants' actions were protected political speech or expression. In this light, I remain confident despite the Court's answers today that Section 1311 can and will be interpreted and applied in Oklahoma courts well within the limits of Counterman and the First Amendment.

FOOTNOTES

Terry Certified Question I, we attempted to confine our answer to the state law requirements of Section 1311 in light of its legislative history and plain language. Since this approach proved less than helpful to the Court of Appeals, this Court should now make explicit that the First Amendment limitations articulated in Counterman will necessarily shape our application of Section 1311 in actual cases.